**FILED**

**JANUARY 11, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**08 C 288**

| | | |
|---|---|---|
| HENRY S. HARRISON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case   No.:_____ |
| | ) | |
| THE NATIONAL ASSOCIATION OF REALTORS, | ) | |
| | ) | **JUDGE DARRAH** |
| Defendant, | ) | **MAGISTRATE JUDGE BROWN** |

### COMPLAINT FOR MONEY DUE

Plaintiff Henry S. Harrison ("Harrison") complains against defendant National Association of Realtors and states:

### JURISDICTION AND VENUE

1.    Plaintiff Henry S. Harrison is an established and successful writer who has authored numerous works.  His residence and principal place of business is New Haven, Connecticut.

2.    Defendant National Association of Realtors is a not-for profit corporation, incorporated in the State of Illinois, having its principal place of business in Chicago, Illinois.

3.    The matter in controversy exceeds, exclusive of interest and costs, the sums specified by 28 U.S.C. § 1332.

## BACKGROUND & FACTS

4.      Defendant National Association of Realtors through its Realtors National Marketing Institute and other divisions publishes various books and publications.

5.      In approximately 1973, the parties entered into their first agreement for the publication of Mr. Harrison's work entitled Houses, the Illustrated Guide to Construction, Designs and Systems (hereinafter referred to as the "Work"). Throughout the 1970s and early 1980s, several editions printing and reprinting of the Work were undertaken pursuant to the contracts in place at the time.

6.      Unfortunately, the Defendants did not pay royalties due to Mr. Harrison and as a result, in approximately 1984 after lengthy negotiations, a settlement was entered into by and between the parties in which the Defendant paid to Mr. Harrison delinquent and unpaid royalties.

7.      In 1991, the parties entered into a new agreement (a copy of which is attached hereto and incorporated herein as Exhibit 1, and referred to as the "Agreement"), dated May 1, 1991 for the continued publication by the Defendant of the Work.

8.      As a result of the prior nonpayment and/or underpayment of royalties by the Defendant, the Parties specifically agreed to a substantial interest payment in the event of any other delinquencies, lateness, arrears or nonpayment by the Defendant. Specifically, Paragraph 9(f) of the Agreement calls for a royalty of five percent (5%) monthly late fees on balances due until they are paid in full.

9.    Unfortunately, once again, Defendant was derelict in its royalty obligations and another settlement agreement was entered into which covered the underpayment and nonpayment of royalties through 1999.

10.    In 1999, Mr. Harrison authored an updated version of the Third Edition of the Work.

11.    In approximately December 1997, the Defendant entered into an agreement with Dearborn Financial Publishing, Inc., a Kaplan Professional Company, as Publisher's licensee or agent who was engaged for the purpose of sale, distribution or manufacture of the Work. (a copy of the cover title pages of the Kaplan Edition of the Work are attached hereto as Exhibit 2)

12.    Under the terms of the Agreement in Section 9(b), Mr. Harrison was to receive a royalty of the fifteen percent (15%) of the net proceeds actually received by the Publisher, or received by the Publisher's licensing agent engaged for the purpose of sale, distribution and manufacturing of the Work less returns.

13.    The Agreement additionally provides for a royalty of fifty percent (50%) of the next receipts received by the publisher on sale or license to any third party or any subsidiary rights in the Work.

14.    Under the specific language of the Agreement, Mr. Harrison was to receive fifteen percent (15%) of either the sums received by the Publisher (Defendant) if it was actually publishing the work, or fifteen percent (15%) of the proceeds received by the Publisher's licensee (in this case Dearborn Financial Publishing, Inc.) if the Publisher delegated its obligations to a licensee or an agent engaged for purposes of sale, distribution and/or manufacture of the Work.

15.    The agreement entered into by and between the Defendant and Dearborn Financial Publishing, Inc. (a copy of which is attached hereto as Exhibit 3) is an agreement covered by Section 9(b) of the Agreement which required Mr. Harrison to be paid fifteen percent (15%) of the license/agent's receipts.

16.    As such, Mr. Harrison is entitled to fifteen percent (15%) of the revenues received by Dearborn Financial Publishing, Inc. from the sale of the Work.

17.    Based on information and belief, Dearborn Financial Publishing, Inc. has been paying the Defendant the sums called for under their separate agreement. However, Mr. Harrison has not been receiving his fifteen percent (15%) of the amounts received by Dearborn Financial Publishing, Inc. based on its role as publisher, licensee or agent as provided for in the Agreement.

18.    Additionally, Defendant has been selling copies of the Work as well which are not covered by the Dearborn Financial Publishing, Inc.'s agreement but for which Mr. Harrison is to be compensated. Mr. Harrison has not been paid his fifteen (15%) royalties on those sales either.

19.    Mr. Harrison has not received the interest due him for the late and nonpayment of royalties as he is entitled to under the Agreement.

20.    Mr. Harrison has made repeated demands individually and through counsel upon the Defendant for the payment of the sums due him to no avail.

21.    Based on information and belief of the sums received by Dearborn Financial Publishing, Inc. and the late fees called for in the Agreement have resulted in Defendant being indebted to Mr. Harrison for a sum in excess of $275,000.00, plus accruing interest, costs and attorneys fees.

WHEREFORE, plaintiff Henry S. Harrison requests this Court to enter judgment in his favor and against defendant National Association of Realtors as follows:

(1) for an accounting of all sales and revenues based on the sale of the Work by Defendants and Dearborn Financial Publishing, Inc.;

(2) for payment of all royalties and interest relief that is called for by the Parties' agreement; and

(3) for his expenses, costs and reasonable attorney fees or such further relief as the Court deems just and proper.


Respectfully submitted,


_____ s/ Daniel Cummings _____
ROTHSCHILD, BARRY & MYERS LLP
55 West Monroe Street, Suite 3900
Chicago, IL 60603
(312) 372-2345

# EXHIBIT 1

PUBLICATION AGREEMENT

HENRY S. HARRISON (herein referred to as the "AUTHOR") shall deliver to REALTORS NATIONAL MARKETING INSTITUTE of the NATIONAL ASSOCIATION OF REALTORS, a not-for-profit corporation of the State of Illinois, having a place of business at 430 N. Michigan Ave., Chicago, Illinois 60611, (the "PUBLISHER") a Work entitled "Houses" (the "Work"), and the PUBLISHER shall publish the Work in accordance with and subject to the provisions of this AGREEMENT made this 1st day of May, 1991 between the AUTHORS and the PUBLISHER.

1. <u>Delivery of the Work</u>  The AUTHOR shall deliver to the PUBLISHER, not later than July 1, 1991 three (3) final copies of the Work, satisfactory to the PUBLISHER in content, in double spaced typewritten form on 8 1/2 by 11 inch sheets, or as may otherwise be specified by the PUBLISHER (see addendum, section A), ready for publication, and precise pencil sketches or photographs for all illustrations and charts, figure legends, a foreword, preface, table of contents, index, appendixes, glossary of terms, and bibliography, if any, that the Publisher considers necessary to market the Work successfully. If, in the PUBLISHER'S sole discretion, additional revisions to the Work delivered in accordance with the first sentence of this paragraph 1 are deemed necessary, the AUTHOR agrees to make such revisions and deliver the Work in final revised form, satisfactory to the PUBLISHER in form and content as provided above within sixty (60) days of the PUBLISHER'S request. If the AUTHOR fails to supply any of these constituents of the Work, the PUBLISHER may have them made and charge the expense of making them against the AUTHOR's royalties hereunder.

2. <u>Editorial</u>  The Work shall be subject to editing and alteration by the PUBLISHER at the original printing and at any reprinting. PUBLISHER shall have the right to make or to have made, if the PUBLISHER so chooses, such changes or deletions as may be reasonably necessary, in the opinion of the PUBLISHER, to render the Work fit and acceptable for printing, publication, sale, or commercialization. AUTHOR has the right to approve all editorial corrections, additions and deletions. The making or non-making of any such changes or deletions shall not in any way modify or alter the rights and obligations of the PUBLISHER and of the AUTHOR as specified in this Agreement. Expense of the AUTHOR's proof correction exceeding fifteen percent (15%) of the cost of composition shall be charged against the AUTHOR's earnings hereunder. The PUBLISHER shall have the right in its discretion to add additional supplementary materials to the Work, and the AUTHOR shall not thereby acquire any right, title or interest therein.

3. <u>The Grant</u>  The AUTHOR grants, assigns, and transfers to the PUBLISHER all right, title and interest in and to the Work, together will all copyrights thereto, registered or unregistered, now or hereafter existing, and the sole and exclusive worldwide rights to print, publish, sell and commercialize the Work during the full term of copyright, in all forms, in all languages, and in all media throughout the world, including the right to dispose of such rights, and further including any other rights related to the Work in any way. Such work shall be deemed "work made for hire" within the meaning of the United States Copyright Act. The AUTHOR agrees to execute and deliver to the PUBLISHER, promptly on request, any documents which PUBLISHER may reasonably request to enable or assist PUBLISHER to obtain and protect copyrights and similar rights. The AUTHOR agrees not to publish, print, commercialize or sell the Work in any form whatsoever or to authorize any third party to do so, except as expressly provided in this Agreement, it being understood that all such rights belong to the PUBLISHER. The AUTHOR further agrees not to prepare or assist in the preparation of any work of a similar character or on the same general subject, which the PUBLISHER reasonably believes will interfere with sale of the Work in any form, without the express written consent of the PUBLISHER. The AUTHOR further grants the PUBLISHER the right to use and authorize the use of the name, likeness and photograph of the AUTHOR in connection with the promotion or sale of the Work in all countries and in all media.

4. <u>Third Parties</u>  The AUTHOR shall obtain, at AUTHOR's expense, and furnish to the PUBLISHER, the written permission of every third person whose permission may reasonably be required, in the opinion of the PUBLISHER, for the publication or quotation of all matter contained in the Work which is protected by existing copyright or may otherwise be subject to a subsisting right of property, privacy, or publicity in such third person.

5.    <u>Publication</u>  Upon receipt of the final revised Work, the PUBLISHER shall have         days to review and

evaluate the Work and determine whether the Work will be accepted by the PUBLISHER for publication. Payment of any sum or sums to the AUTHOR pursuant to paragraph 9 hereof shall not constitute receipt of the final revised Work. If, during this period of time, the PUBLISHER, in its sole discretion, determines that the condition or character of the Work is not satisfactory to the PUBLISHER, or if the Work is not delivered on time, the PUBLISHER may reject the Work and terminate this Agreement and return the Work to the AUTHOR. If the PUBLISHER shall reject the Work, all rights in and to the Work shall automatically revert to the AUTHOR, and the AUTHOR shall repay to the PUBLISHER any advances on royalties paid to the AUTHOR in respect of the Work. If the PUBLISHER elects to proceed with publication, the PUBLISHER shall use its best efforts to have the Work ready for distribution within one (1) year from the date the PUBLISHER formally accepts the Work for publication, subject to the provisions of this Agreement.    If the PUBLISHER proceeds with publication, PUBLISHER shall publish and promote the Work at the PUBLISHER's own expense and in such style and manner as the PUBLISHER shall deem best suited to its sale (including, without limitation, by authorizing an agent or licensee of PUBLISHER to sell, distribute or manufacture the Work), and at such price as the PUBLISHER shall choose. PUBLISHER shall be under no duty to sell any specific numbers of the Work, or to publish more than one edition of the Work.

6.  Copyright  The PUBLISHER is hereby expressly authorized to take out a copyright in the Work in the name of the PUBLISHER and to take all steps required to register said copyright in the United States and in such other countries as may be desirable in the PUBLISHER's sole discretion. The AUTHOR will, upon the PUBLISHER's request, do all acts necessary to effect and protect the copyright and renewals and extensions thereof and does hereby irrevocably, as long as this Agreement shall remain in force, constitute and appoint the PUBLISHER as the AUTHOR's agent to apply for and obtain renewal or extension of said copyright in the name of the AUTHOR in any and all countries.

7.  Acknowledgement  The PUBLISHER agrees that every publication of the Work will acknowledge the AUTHOR's contribution, provided however, that the PUBLISHER shall have no obligation to promote the AUTHOR, any of the AUTHOR's other works not covered by this Agreement, or any business or affiliation of the AUTHOR in the advertising or promotion of the Work. AUTHOR's name will appear on the cover and spine of every book in type at least 1/2 (one half) the size of the title of the book.  AUTHOR's name will appear in every advertisement of the book in type at least 1/2 (one half) the size of the title of the book.

8.  Author's Representations and Warranties  The AUTHOR represents and warrants to the PUBLISHER (except with respect to material supplied by the PUBLISHER): (a) that the Work is original; (b) that the AUTHOR is the sole AUTHOR and proprietor thereof and has full power to enter into this Agreement (see Addendum, part B); (c) that if published the Work will not infringe upon any copyright or any other right whatsoever; and (d) that the Work is innocent and contains no matter whatsoever that is obscene, libelous, or otherwise in contravention of law. The AUTHOR shall indemnify and hold the PUBLISHER harmless against any suit, claim, or proceeding, including court costs and attorney fees, which may be sustained by or recovered against the PUBLISHER by reason of the breach of any of the AUTHOR's warranties and representations in this Agreement.  The PUBLISHER shall promptly notify the AUTHOR of any claim or proceeding against the PUBLISHER which may involve a breach of the AUTHOR's representations and warranties hereunder, and AUTHOR shall, at AUTHOR's expense, promptly defend and continue the defense of any such suit, claim, or proceeding, provided that PUBLISHER shall give the AUTHOR such reasonable time as the exigencies of the situation may permit in which to undertake and continue the defense thereof.  Until such suit, claim, or proceeding is settled or withdrawn, the PUBLISHER may withhold any sums due the AUTHOR hereunder.  If the AUTHOR shall fail to undertake and continue said defense to the PUBLISHER's satisfaction, then the PUBLISHER may defend such matter as it sees fit, and all expenses thereof, together with the amount of any judgment arising from the breach of any of the AUTHOR's representations or warranties hereunder, shall be paid by the AUTHOR.  Nothing herein shall prevent the PUBLISHER from defending any such suit, claim, or proceeding at its own expense through its own counsel, notwithstanding the defense thereof may have been undertaken by the AUTHOR.

9.  Royalties  PUBLISHER shall pay to, or upon the order of, the AUTHOR royalties from the proceeds received from the sale or license of the Work (other than sales made pursuant to paragraph 10 hereof), as follows:

(a) An advance against future royalties of Fifteen Hundred Dollars ($1,500.00) upon receipt of the signed Agreement.

(b) A royalty of fifteen percent (15%) of the net proceeds actually received by the PUBLISHER in respect of (i) all sales by PUBLISHER (or PUBLISHER'S licensee or agent engaged for the purpose of sale, distribution or manufacture of the Work), less returns, of the regular edition of the Work in the United States and (ii) the exercise of other rights granted to the PUBLISHER pursuant to this Agreement, except as hereinafter provided.

(c) A royalty of fifty percent (50%) of the net proceeds actually received by the PUBLISHER from the sale or license to any third person of any subsidiary rights in the Work. Subsidiary rights as used herein shall mean any rights in the Work granted to any third person (except as provided in paragraph 5 and subparagraph 9(b) hereof), including serialization, book club, and foreign language rights.

(d) A royalty of fifteen percent (15%) of the net proceeds actually received by the PUBLISHER, less returns, in respect of all sales by the PUBLISHER of the Work in any other form including a revised edition ("a derivative work"), subject to the AUTHOR's rights under paragraph 11 of this Agreement, if the PUBLISHER incurs any additional expense or royalty obligation from the royalties payable to the AUTHOR in respect of such derivative work, the PUBLISHER may deduct the amount of such additional expense or royalty obligation from the royalties payable to the AUTHOR in respect of such derivative work, provided however, that such deductions shall not exceed one half (1/2) of the royalties otherwise payable to the AUTHOR in respect of such derivative work.

(e) If any unforeseen problem should arise in editing or otherwise placing the Work in satisfactory form for publication and the AUTHOR is unwilling or unable to assist the PUBLISHER in resolving said problem, and if, as a result, the PUBLISHER incurs any extraordinary expense such expense may be charged against AUTHOR's royalties.

(f) The PUBLISHER, within two (2) months after December 31 and June 30 of each year, will render the AUTHOR reports of the sale of the Work covering the six (6) month period ending on such December 31 and June 30, respectively, and at the time of rendering each statement will make payment of any balance shown to be due to the AUTHOR under this paragraph 9. If balance due is not paid within the two month period described above, PUBLISHER will pay AUTHOR five percent (5%) monthly interest on balance until it is paid in full. Any amount due the PUBLISHER from the AUTHOR, including but not limited to advances on or overpayment of royalties, chargeable expenses or other indebtedness, may be offset against payments due the AUTHOR under this Agreement. In its sales accounting statement, the PUBLISHER may set up a reserve which, in its opinion, will allow for returns during the two (2) accounting periods following the period in which publication occurs. This reserve shall not exceed fifteen percent (15%) of the earnings accrued to the AUTHOR in the respective royalty periods.

(g) The PUBLISHER agrees to keep books and records in sufficient detail to permit calculation of royalties due hereunder. The AUTHOR shall have the right to examine such records, either in person or through a duly authorized agent, for the purpose of verifying the computation of royalties paid under this Agreement. All such examinations shall take place during regular business hours, upon reasonable advance notice, and no more than once per semi-annual accounting period.

(h) The amounts, if any, payable to AUTHOR pursuant to paragraph 9 hereof shall be paid as follows: One hundred percent (100%) to Henry S. Harrison. AUTHOR acknowledges that the receipt of such sums by AUTHOR in the manner described herein shall be a good and valid discharge of all sums payable to AUTHOR hereunder.

(i) Rights to the Work as a whole cannot be given away by the PUBLISHER without the permission of and negotiable compensation to the AUTHOR.

(j)  The Work cannot be included as course or seminar material unless the sale price of the book is separately designated.

(k)  The PUBLISHER may give away no more than five percent (5%) of the total books in print for any reason. The PUBLISHER will pay the AUTHOR a royalty of five percent (5%) of the list price on any additional books given away for any reason.

10.  AUTHOR's Copies  The PUBLISHER shall furnish to the AUTHOR, free of charge, six (6) copies of the regular edition of the Work as originally published. Any additional copies of any version of the Work shall be supplied to the AUTHOR at PUBLISHER's cost plus 10%, not to exceed 50% of the cover price. Copies thus purchased may be sold by the AUTHOR. No royalties shall be paid to AUTHOR for sales of copies of the Work supplied to AUTHOR pursuant to this paragraph 10.

11.  Revised Editions  If the PUBLISHER exercises its rights hereunder by publishing the Work in a revised edition, PUBLISHER shall notify AUTHOR by registered mail to the address last given by AUTHOR. If requested to do so by PUBLISHER, AUTHOR may within thirty (30) days of the mailing of such notice, and, if otherwise willing and able, agree to prepare the revised edition in return for royalties as provided in paragraph 9 of this Agreement, or on such other terms as may be mutually acceptable. If the AUTHOR is unable or unwilling to prepare the revised edition in accordance with the PUBLISHER's needs, and on reasonable terms and conditions, the PUBLISHER may secure, in its discretion, the assistance of another AUTHOR (other than the AUTHOR) in the preparation of such revised edition.

12.  Enforcement of PUBLISHER's Rights  In any action brought by the PUBLISHER to enjoin infringement of the copyright in the Work and for any damages resulting therefrom, the expenses of such action shall be borne by the PUBLISHER but the net recovery, if any, after deductions of all the PUBLISHER's expenses, shall be shared equally by the PUBLISHER and the AUTHOR.

13.  Remainder Sales  If the PUBLISHER has a stock of the Work on hand which, in its judgment, could not be sold on usual terms in a reasonable time, it may sell such copies at the best price it can secure; provided, however, that the AUTHOR shall have a right of first refusal to obtain such stock at PUBLISHER's cost. If such stock is sold at or below the PUBLISHER's cost, or is sold by AUTHOR, no royalty shall be paid to the AUTHOR on such sales. No royalty shall be paid on copies destroyed or on copies given away to promote sales of the Work.

14.  Discontinuance of Manufacture  If the PUBLISHER shall discontinue manufacture of the Work, it shall notify the AUTHOR by registered mail at the address last given by the AUTHOR. Within thirty (30) days after the mailing of such notice, the AUTHOR shall have the right to purchase from the PUBLISHER at cost any existing copies of the Work. If the purchase is not made within said thirty (30) days, the PUBLISHER may destroy any such copies without prejudice to the PUBLISHER's other rights hereunder. The PUBLISHER shall have the right to require the deletion of any reference to the PUBLISHER, its affiliates and members from any and all such copies made available to the AUTHOR under this paragraph 14. The discontinuation of manufacture of the Work in any medium shall not prejudice the PUBLISHER's continued and future rights in that or any other medium, except as expressly agreed in writing at the time of discontinuation.

15.  Applicable Law  Regardless of its place of execution, this Agreement, and its interpretation, validity and effect, shall be governed by the laws and statutes of the State of Illinois.

16.  Assignment  This Agreement shall inure to the benefit of, and shall be binding upon, the heirs, executors, or administrators and assigns of the AUTHOR and any successor in business of the PUBLISHER, but either party reserves the right to separately sell or assign its rights under this Agreement, providing such sale or assignment shall not breach or infringe upon the rights given or warranties made to the other party hereunder. Neither party may assign any of its obligations hereunder without the written consent of the other party, except that (i) PUBLISHER may assign or transfer its rights and obligations hereunder to any affiliated corporation or successor to substantially all of its business, and (ii) PUBLISHER may, pursuant to paragraph 5 hereof, authorize an agent or licensee of PUBLISHER to sell, distribute or manufacture the Work.

17. <u>No Waiver</u>  The waiver by any party hereto of any breach of any provisions of this Agreement by any other party shall not be construed to be a waiver of the provision.

18. <u>Entire Agreement</u>  This Agreement contains the whole understanding of the parties, supersedes all previous oral or written representations or agreements, and may not be changed, modified, or discharged orally. Any modification, change or discharge of this Agreement must be in writing and signed by a duly authorized officer of the PUBLISHER.  The section headings contained herein are for reference purposes only and shall not in any way affect the meaning or interpretation of this Agreement.

AUTHOR:

Signature

HENRY S. HARRISON

PUBLISHER:

BY:

Signature

NINA COTTRELL
Executive Vice-President
RESIDENTIAL SALES COUNCIL of the
REALTORS NATIONAL MARKETING INSTITUTE

ADDENDUM to the contract dated May 1, 1991 between Henry S. Harrison (AUTHOR) and the REALTORS NATIONAL MARKETING INSTITUTE of the NATIONAL ASSOCIATION OF REALTORS (PUBLISHER).

A.     The AUTHOR will deliver to the PUBLISHER a manuscript of the Work in clearly marked, cut-and paste form using the original edition. Any entirely new additions or revisions will be delivered to the PUBLISHER in the form described in section 1 of the contract.

B.     Be it known that the AUTHOR received paid help in preparing the original text and illustrations from Peter A. Farbach, Joseph Jaqua, Ronald Noe, Jean Schildyen, and Margery B. Leonard. The AUTHOR agrees to be responsible for any additional payments they may rightfully claim.

C.     If the AUTHOR uses the services of independent contractors in the process of preparing the Work, all such services shall be rendered pursuant to agreement between AUTHOR and such contractors. It is understood that AUTHOR is solely responsible for the performance of this contract.

D.     AUTHOR is an independent contractor and is not an agent or employee of PUBLISHER. AUTHOR agrees to comply with any and all Federal, State and local laws and regulations in performing hereunder.

AUTHOR:

Signature

HENRY S. HARRISON

PUBLISHER:

Signature

NINA J. COTTRELL
Executive Vice-President
RESIDENTIAL SALES COUNCIL of the
REALTORS NATIONAL MARKETING INSTITUTE

# EXHIBIT 2

# HOUSES

**3rd edition**

## The Illustrated Guide to Construction, Design & Systems



# Henry S. Harrison

# HOUSES

### *The Illustrated Guide to Construction, Design & Systems*

### *3rd edition*

# Henry S. Harrison



Real Estate Education



RS RESIDENTIAL SALES COUNCIL

430 NORTH MICHIGAN AVENUE CHICAGO ILLINOIS 60611-6092

This publication is designed to provide accurate and authoritative information in regard to the subject matter covered. It is sold with the understanding that the publisher is not engaged in rendering legal, accounting or other professional service. If legal advice or other expert assistance is required, the services of a competent professional person should be sought.

Director of Product Development: Carol L. Luitjens
Executive Editor: Diana Faulhaber
Senior Development Editor: Nikki Loosemore
Managing Editor: Ronald J. Liszkowski
Art Manager: Lucy Jenkins
Cover Design: Salvatore Concialdi

Illustrations: Carla Bengtson, Peter A. Farbach, Joseph Jaqua, Ronald Noe and
    United States League of Savings Institutions

Residential Sales Council Project Manager: Bob Wolff

©1973 by the National Institute of Real Estate Brokers of the NATIONAL ASSOCIATION OF REALTORS®. All rights reserved. NIREB is now the REALTORS NATIONAL MARKETING INSTITUTE®.

First revised edition ©1976 by the REALTORS NATIONAL MARKETING INSTITUTE® of the NATIONAL ASSOCIATION OF REALTORS®. All rights reserved.

Second edition ©1992 by the Residential Sales Council™ of the REALTORS NATIONAL MARKETING INSTITUTE®, an affiliate of the NATIONAL ASSOCIATION OF REALTORS®. All rights reserved.

Third edition ©1998 by the Residential Sales Council™ of the REALTORS NATIONAL MARKETING INSTITUTE®, an affiliate of the NATIONAL ASSOCIATION OF REALTORS®.

Published by Real Estate Education Company®, a division of Dearborn Financial Publishing, Inc.®, and the Residential Sales Council™ of the REALTORS NATIONAL MARKETING INSTITUTE®, an affiliate of the NATIONAL ASSOCIATION OF REALTORS®.

All rights reserved. The text of this publication, or any part thereof, may not be reproduced in any manner whatsoever without written permission from the publisher.

Printed in the United States of America

10    9

Library of Congress Cataloging-in-Publication Data

Harrison, Henry S.
    Houses : the illustrated guide to construction, design & systems /
Henry S. Harrison. — 3rd ed.
        p.   cm.
    Includes bibliographical references and index.
    ISBN 0-7931-2967-2
    1. Architecture, Domestic–Handbooks, manuals, etc.    2. Building
materials—Handbooks, manuals, etc.    I. Title
NA7110.H33    1998
728´.3—dc21
                                                                98-18256
                                                                    CIP

## DEDICATION

To Eve and Julie, Kate and H Alex

# EXHIBIT 3

PPN 1913-1503
ISBN 0-7931-2967-2



# PUBLISHING AGREEMENT

This is an Agreement made this 9th day of December , 19 97 , between Realtors National Marketing

Institute _____ ("Author")
and DEARBORN FINANCIAL PUBLISHING, INC., an Illinois corporation ("Publisher"). Publisher is an independent
contractor and is not an agent or employee of the Author.
The parties agree as follows:

## 1. THE WORK

a. Author will prepare and deliver a manuscript tentatively entitled:

Houses: The Illustrated Guide to Construction, Design and Systems, 3rd Edition

(hereinafter referred to as the "Work") to the Publisher no later than January 5th , 19 98 .

b. The Work shall be approximately 544 printed pages in length, and shall be acceptable to Publisher in content and form. Author shall deliver the manuscript to Publisher both on computer diskettes in a format acceptable to Publisher and in three (3) copies of double-spaced, 8½ x 11 typewritten manuscript pages. The manuscript shall include precise pencil sketches or photographs for all illustrations and charts, figure legends, equations and formulas, a foreword, preface, table of contents, index, appendixes, glossary of terms, and bibliography, if any, that Publisher considers necessary to market the Work successfully. Author agrees to assume the cost of preparing and typing the manuscript of the first edition and any subsequent editions, as well as for normal communication expenses incurred by Author during interaction with Publisher.

c. Author agrees to prepare an instructor's manual and testbank to accompany the Work in the form designated by Publisher if Publisher considers the instructor's manual and testbank necessary to market the Work successfully. The instructor's manual and testbank shall be considered part of the Work for purposes of this Agreement.

d. Author agrees to prepare a student workbook to accompany the Work in the form designated by Publisher if Publisher considers the student workbook necessary to market the Work successfully. The student workbook shall be considered part of the Work for purposes of this Agreement.

e. Author should always retain a copy of the Work. Publisher shall use reasonable care in safeguarding the Work and any other material transmitted by Author, but if, despite the exercise of reasonable care, there is loss or damage to the Work or other material, Publisher shall not be liable or responsible therefor.

f. If Author does not submit the manuscript on or before the due date, unless the time for submission has been extended in writing by Publisher, this Agreement shall be converted into

an option to Publisher to publish the Work, in which case Publisher shall have 90 days from the date when the manuscript is submitted to determine whether it will accept the Work for publication subject to Paragraph 1i and the other terms of this Agreement.

g. If there is more than one Author for the Work and any Author notifies Publisher of a disagreement among Authors that precludes the timely submission of the manuscript, Publisher in its sole discretion may elect by notice to terminate this Agreement with respect to all Authors or, alternatively, to terminate this Agreement with respect to one or more of the Authors and continue the Agreement in effect with respect to the other Author or Authors or to enter into a new Agreement with respect to the Work with the other Author or Authors and one or more other persons.

h. Publisher has the right to make any editorial changes in the Work it considers desirable and necessary, but Author shall be given an opportunity to review all such changes. If these changes are required due to failure of Author to complete the tasks for which Author is responsible under this Agreement, the cost of making these changes will be at Author's expense and may be charged against Author's royalty account.

i. If, after customary exchange between Author and Publisher, the content of the Work submitted by Author is not satisfactory to Publisher, or if Author fails to deliver any of the material listed above, Publisher shall have the right to have any of the material listed prepared at Author's expense and charged against Author's royalty account, or at Publisher's option to terminate this Agreement by written notice, and all amounts, if any, that have been advanced to Author against the royalties to be received hereunder shall be refunded at the request of Publisher, who will, at time of such refund, deliver to Author this duly canceled Publishing Agreement and reassign to Author all rights assigned to Publisher by Author under this Agreement.

j. Author shall obtain permission for the use of previously published copyrighted materials and deliver permission documents satisfactory to Publisher. Any expenditure by Publisher on behalf of Author under this paragraph shall be at Author's expense and may be charged against Author's royalty account.

k. Author shall notify Publisher in writing of the existence and location of all materials taken from documents prepared and published by the United States Government, and therefore not subject to copyright.

Rev. 4/95

## 2. AUTHOR'S CORRECTIONS

After the manuscript has been accepted by Publisher, edited and revised as required by Publisher, reviewed and approved by Author, and prepared in final copy for printing, should Author make or cause to be made any alterations in type, illustrations, or plates, that are not corrections of typographical or draftsman's errors and that exceed ten (10) percent of the cost of composition and artwork, independent of these alterations, such excess alternations shall be at Author's expense and may be charged to Author's royalty account. Author shall be responsible for the accuracy and completeness of the Work.

## 3. PUBLISHING

When the manuscript and all other pertinent material is acceptable to Publisher, Publisher shall proceed to publish the Work in book form and/or other media with reasonable promptness and at Publisher's expense, in such style and manner and to market it by such means and at such price that the Publisher feels is appropriate and best suited to sales of the Work. Publisher, from time to time during the life of this Agreement, shall publish the Work and revisions thereof in book form and/or other media as long as there shall be, in Publisher's opinion, a reasonable demand for the Work.

## 4. GRANT OF RIGHTS

a.  Publisher will have the sole right to publish and sell, and to permit others to publish and sell, the Work, and excerpts, adaptations and other derivative works based on the Work, in all media, known and unknown, including, without limitation, translations, dramatizations, sound recordings, motion pictures, film strips, videotapes, television and radio broadcasting, computer programming, programmed adaptations, multi-media works, electronic books, magnetic tape, computer disks, on-line, CD-ROM, CD-I, laser disk, optical disk, IC card or chip and any other human or machine readable medium, whether in sequential or non-sequential order and whether or not permanently affixed in any media, as well as all rights to serialization, special editions, paperback reprints, anthological book clubs, foreign publication or distribution, and all other rights to reproduce the Work or any part of substance thereof, in any form whatsoever. If no compensation to Author is specified in Section 6 for a particular use or right, Publisher nevertheless shall be entitled to such use or right and shall pay Author the compensation for the use or right mentioned in Section 6 that most nearly parallels in method and return to Publisher the unspecified use or right.

b.  Publisher may, at its discretion, and without thereby incurring any liability to Author, publish or permit others to publish any selections of the Work that Publisher may deem appropriate to promote the sales of the Work. Publisher may allow braille, sight-saving editions or "talking books" for the blind to be published. In the event that Publisher receives no compensation from such editions, it shall be under no obligation to Author with respect thereto.

## 5. COPYRIGHT

Author assigns to Publisher the copyright to the Work and supplementary materials and their revisions prepared by Author and grants Publisher the exclusive right to register the copyright, including renewals thereof, throughout the world, in the name of Publisher. Author assigns to Publisher all other legal and equitable rights, titles and interest in and to the Work and supplementary materials and their

revisions prepared by Author. Author agrees to execute and deliver to Publisher any copyright assignments and other documents necessary to preserve valid copyright. Publisher shall preserve and record ownership by securing necessary copyright registrations and renewals thereof.

*See Rider 5A.

## 6. ROYALTY

Publisher agrees to pay Author as full compensation for all work done and rights granted herein the following royalties:

a.  __10__ percent of Publisher's net receipts for copies sold in the United States as textbooks, or for use in classroom situations.

b.  Fifteen (15) percent of Publisher's net receipts for copies sold in the United States through traditional book trade channels.

c.  Five (5) percent of Publisher's net receipts for copies sold in the United States directly to the consumer through the media of mail order, coupon advertising, radio advertising, television advertising, conventions or on-line.

d.  Five (5) percent of Publisher's net receipts for copies sold upon special orders received from business concerns where a special quantity discount of sixty (60) percent or more of the advertised list price of the book is granted.

e.  Five (5) percent of Publisher's net dollar receipts (net of any withholding or other taxes) for copies of the regular trade edition of the Work sold by the Publisher in countries other than the United States, regardless of the type of sale.

f.  Thirty (30) percent of the net amount of any compensation received by Publisher from the sale of subsidiary rights, such as book clubs and third party paperback reprint rights.

g.  Thirty (30) percent of the net amount of any compensation received by Publisher from the sale of foreign translation and reprint rights.

h.  Five (5) percent of the net amount of any compensation received by Publisher for copies sold in the form of software, video, audio or any other electronic or non-print products; provided, if the product containing the Work also contains other materials, the royalty shall be based on the portion of the receipts from the product attributable to the Work, as determined by Publisher in good faith.

i.  Net receipts shall mean Publisher's receipts after discounts, returns, bad debts, freight charges, sales taxes and foreign taxes. No royalty shall be paid on copies furnished without charge for reviewing, advertising, sample, promotion, or other similar purposes. No royalty shall be paid on copies sold on a remainder basis.

## 7. PAYMENT

Royalties due the Author shall be calculated semiannually as of the end of February and the end of August and shall be remitted to Author within sixty (60) days of that date along with a statement of copies sold. Author shall have the right to inspect the relevant books of account of Publisher during regular business hours to check the accuracy of the sales statement submitted. Publisher may change the royalty computation periods by notice to Author, provided no royalty computation period is longer than six (6) months. Publisher shall have

the right to withhold from royalty payments a reasonable reserve for the possible return of copies of the Work sold on a returnable basis. If Author receives an overpayment of royalty resulting from copies reported sold but subsequently returned, the same may be deducted by Publisher from any further sums due to Author. Publisher may deduct from any funds due Author any other sum that author may owe Publisher. Publisher shall have the right to postpone payment of royalties until they total twenty-five dollars ($25.00) or more. Notwithstanding the above, royalty accounting and payments may be discontinued at Publisher's discretion when, for four (4) successive royalty periods, earned royalties from all sources do not exceed twenty-five dollars ($25.00).

## 8. AUTHOR'S COPIES

Publisher agrees to give a total of ten (10) copies of the published Work to Author without charge. Author shall have the right to purchase additional copies for personal use and not for resale at a discount of forty (40) percent from Publisher's retail price.

## 9. WARRANTY

Author (if the term Author designates more than one person, each person jointly and severally) represents and warrants that no one other than Author has any right in and to the Work or any portion thereof; the Work is original and is not in the public domain; it has not previously been published; it does not violate or infringe any copyright, whether common law or statutory, and contains nothing libelous or otherwise contrary to law; and Author has full power to enter into this Agreement. These warranties and representations shall apply to any revisions or subsequent editions of the Work and shall survive termination of this Agreement. Author shall indemnify and hold harmless Publisher and those to whom Publisher may license or grant rights hereunder or sell the Work from any and all loss, damage, liability or expense, including reasonable attorney's fees, arising out of any breach or alleged breach of any of the foregoing warranties.

## 10. PROMOTION AND PUBLICITY

Author agrees to assist Publisher in the preparation and implementation of a promotional program to bring the Work to the attention of potential users. Such assistance may include: (a) helping identify potential markets for the Work, and (b) where mutually deemed useful, making contacts by letter and/or telephone to aid in the sale. Author grants to Publisher the right to use Author's name and likeness and biographical information in connection with the promotion and advertisement of the Work and the revisions thereof.

*See Rider 10A.
## 11. NEW OR REVISED EDITIONS

a.  If Publisher determines that a revision of the Work is desirable, it shall request Author to prepare the revision and Author shall advise Publisher within thirty (30) days whether he or she will do so. If Author advises Publisher that he or she will prepare the revision, he or she shall diligently proceed with the revision, keep Publisher advised of his or her progress, and deliver the complete manuscript to Publisher on or before the due date (which may be extended in writing by Publisher).

b.  If Author does not advise Publisher within such thirty (30) day period that he or she is willing to prepare the revision, or if Author has died or is otherwise unable to prepare the revision, or if Author does not diligently proceed with the revision, or if a complete manuscript of the revised Work

acceptable to Publisher in organization, form, content and style is not submitted to Publisher on or before the due date, Publisher shall have the right to arrange with third parties for the preparation of the revision.

c.  If there is more than one Author for the Work and any of the Authors fails to advise the Publisher within such thirty (30) day period that he or she is willing to participate in the preparation of the revision or has died or is otherwise unable to prepare the revision, Publisher shall have the right to arrange with the other Author or Authors (either alone or with third parties) to prepare the revision. If the remaining Authors are unwilling or unable to prepare the revision collectively or are unable to agree among themselves within such thirty (30) day period on the manner in which the revision is to be prepared, Publisher may select one or more of the Authors (together with, if the Publisher so elects, one or more third parties) to prepare the revision.

d.  In any case where an Author does not prepare a revision, Publisher shall have the right to arrange with others for the preparation of the revision. In such case, Publisher shall have the right to arrange for the reviser to share royalties with Author, provided that the reviser's share of the royalties with respect to such revisions shall not exceed 50% for the first such revision and shall not exceed 75% for the second such revision. No royalties shall be paid to Author with respect to further revisions not prepared by Author. The revised editions may be published under the same title and may refer to Author by name, but credit may be given to the reviser or revisers in the revised edition and in advertising and promotional material with respect thereto. The provisions of this Agreement, including royalty terms (except as otherwise provided in this Section 11) shall apply to each successive revised edition as though it were a separate work.

## 12. COMPETING WORKS

Author agrees not to, during the continuance of this Agreement, except with the consent in writing of Publisher, write, print, publish or furnish to any other publisher any book or other material in any media that infringes the copyright of this Work or might be used in place of or compete with, injure, or interfere with sales of this Work.

## 13. OPTION FOR NEXT WORKS

Publisher shall have the option to publish the next two book-length business books completed by Author for publication following the Work covered by this Agreement. Author agrees to submit such proposals or manuscripts thereof to Publisher before submission to any other publisher. Publisher agrees to accept or reject such proposals or manuscripts within ninety (90) days after receipt.

## 14. INFRINGEMENT

If the copyright in the Work or in any derivative work based thereon is infringed, Publisher shall have the right, but shall not be obligated, to prosecute an action for infringement in such manner as it deems appropriate. If Publisher prosecutes such an action, it shall recoup the expenses incurred by it from any recovery, and the balance of proceeds, if any, shall be divided fifty (50) percent to Author and fifty (50) percent to Publisher. If Publisher declines to prosecute such an action after a request to do so by Author, Author at Author's expense shall have the right to prosecute an action, and any recovery shall belong solely to Author. Each of the parties hereto shall cooperate with the other in any such action.

## 15. HEIRS, SUCCESSORS AND ASSIGNS

Author may assign the right to receive payment hereunder, but Author's obligations hereunder are personal and nonassignable. Publisher may assign its rights and obligations hereunder. This Agreement will be binding upon and inure to the benefit of the heirs, executors and administrators of Author and the successors and assigns of Publisher.

## 16. NOTICE

Any notice or communication given pursuant to or in connection with the Agreement shall be in writing and shall be sent by certified mail, return receipt requested, as follows:

If to Author:

```
Realtors National Marketing Institute
  of the National Association of Realtors
430 N. Michigan Ave.
Chicago, IL  60611
```

If to Publisher:    Dearborn Financial Publishing, Inc.
155 North Wacker Drive
Chicago, Illinois 60606-1719
Attention: President

Either of the parties may designate a different address by notice given in the same manner.

## 17. OUT OF PRINT

a. If at any time after two years from the original date of publication Publisher fails to keep the Work in print, or if no royalty has been earned for four consecutive royalty periods, Author may make written demand upon Publisher to reprint it and offer it for sale. If Author makes such written demand, Publisher shall within sixty (60) days notify the Author whether Publisher intends to reprint the Work and offer it for sale or not. If Publisher indicates it will reprint and reoffer the work it shall do so within six (6) months.

b. If Publisher notifies Author it will not reprint and reoffer the Work, this Agreement shall terminate and all rights shall revert to Author, subject however to any licenses, options, or rights theretofore granted by Publisher. In case of such termination, Author shall have the right for thirty (30) days to purchase the plates not previously destroyed from Publisher at fifty (50) percent of their cost, and any remaining copies of sheets of Author's Work at their manufacturing cost. If Author fails to do so, Publisher may dispose of them as Publisher shall deem appropriate.

## 18. APPLICABLE LAW

This Agreement shall in all respects be interpreted, construed, and governed by the laws of the State of Illinois.

## 19. WAIVER

No waiver of any term of this Agreement shall be effective unless made in writing and signed by the party making such waiver, and no waiver of any breach hereunder shall be deemed a waiver of any subsequent breach.

IN WITNESS WHEREOF, the parties affix their hands on the respective dates following their signatures.

Publisher: DEARBORN FINANCIAL PUBLISHING, INC.

By: _____

Date: _____3/10/96_____

AGREED TO:

Authors: (1) _____

Address:_____

_____

Social Security No: _____

Date: ___Feb. 27, 1998___

(2) _____

Address:_____

_____

Social Security No: _____

Date: _____

(3) _____

Address:_____

_____

Social Security No: _____

Date: _____

```
Rider and Distribution Agreement attached.
```

PPN 1-115-130-5
ISBN 0-7931-2967-2



**Dearborn**
**Financial Publishing, Inc.®**
*a division of Dearborn Publishing Group, Inc.*

155 North Wacker Drive    Chicago, Illinois 60606-1719    312/836-4400    Fax 312/836-1021    http://www.dearborn.com

# RIDER TO PUBLISHING AGREEMENT

Rider to Publishing Agreement dated <u>December 9, 1997</u> between <u>Realtors National Marketing Institute</u> (the "Author") and Dearborn Financial Publishing, Inc.® (the "Publisher") for the book entitled *Houses: The Illustrated Guide to Construction, Design and Systems,* 3rd Edition.

5A.    <u>Copyright</u>

The copyright shall be taken out by the Publisher in the name of the Author and shall be the Author's sole property; the Publisher will apply for and receive the renewal of, or any extension of same. Author agrees that Publisher still retains the exclusive rights granted to the Publisher in paragraphs (1j) and (1k) of this Agreement.

10A.    <u>Promotion and Publicity</u>

Author shall be referred to as the Residential Sales Council of the Realtors National Marketing Institute. Any variation is subject to Author approval.

In witness whereof, the undersigned have executed this Rider on the following date:
3/10/98

AUTHOR:

_____ EVP
Signature

NINA CATTRELL, EVP
Printed Name

PUBLISHER:

DEARBORN FINANCIAL PUBLISHING, INC.®

By: _____



**Dearborn**
**Financial Publishing, Inc.®**
*a division of Dearborn Publishing Group, Inc.*

155 North Wacker Drive    Chicago, Illinois 60606-1719    312/836-4400    Fax 312/836-1021    http://www.dearborn.com

## DISTRIBUTION AGREEMENT

This will serve as a letter of agreement between Realtors National Marketing Institute ("RNMI") and Dearborn Financial Publishing, Inc.® ("DFPI").

DFPI agrees to grant to RNMI a special discount of 48% off trade list price for the purchase of 3,000 copies of *Houses: The Illustrated Guide to Construction, Design and Systems*, 3rd Edition, providing all of the following conditions are agreed upon and fulfilled by RNMI.

1.  RNMI agrees to purchase at least 1,000 copies annually of the above title in quantities of 100 or more during each of the first three 12-month periods following the date of publication.

2.  It is agreed that all orders of the above title during the term of this agreement shall be shipped to one location stipulated by RNMI.

3.  RNMI agrees to remit payment to DFPI within 30 days of the date of invoice for said orders.

4.  It is agreed that there shall be no returns on the title covered under this agreement, except for damaged books, and that no royalties shall be paid on such orders.

5.  No royalties will be paid on copies purchased under this Distribution Agreement.

Failure to purchase 1,000 copies within the first 12-month period as stated above shall result in the forfeiture of the special 48% discount.

This agreement shall remain in effect while the book remains in print. Acceptance of this agreement will be recognized by signing and returning the original letters within 30 days.

By: _____

Carol Luitjens
Vice President
Dearborn Financial Publishing, Inc.®
155 N. Wacker Drive
Chicago, IL 60606-1719

Dated: 3/10/98

Accepted by: _____ EVP

Realtors National Marketing Institute
  of the National Association of Realtors
430 N. Michigan Avenue
Chicago, IL 60611

Dated: Feb 27, 1998