UNITED STATES IN THE DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HENRY S. HARRISON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | Case No.: 2008-cv-288 |
| | ) | |
| THE NATIONAL ASSOCIATION | ) | Judge:  Darrah |
| OF REALTORS, THE REALTORS | ) | |
| NATIONAL MARKETING | ) | Magistrate Judge: Brown |
| INSTITUTE OF THE NATIONAL | ) | |
| ASSOCIATION OF REALTORS; | ) | |
| And THE COUNCIL OF | ) | |
| RESIDENTIAL SPECIALISTS, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |
| COUNCIL OF RESIDENTIAL | ) | |
| SPECIALISTS, | ) | |
| | ) | |
| Counter-Plaintiff, | ) | |
| | ) | |
| Vs. | ) | |
| | ) | |
| HENRY S. HARRISON | ) | |
| | ) | |
| Counter-Defendant. | ) | |

**ANSWER OF HENRY HARRISON TO COUNTER PLAINTIFF
COUNCIL OF RESIDENTIAL SPECIALISTS COUNTERCLAIM**

NOW COMES, Henry Harrison ("Harrison") by his attorneys, Joshua Kaufman and Daniel Cummings, for his answer to Counter Plaintiff's counterclaim and states as follows:

1.     Counter-Plaintiff CRS is an Illinois not-for-profit corporation with its principal place of business in Chicago, Illinois.

    <u>**ANSWER:**</u>  Harrison lacks knowledge to admit or deny therefore denies and

demands strict proof thereof.

2.      Counter-Defendant HARRISON is a citizen of the State of Connecticut. HARRISON has submitted himself to the personal jurisdiction of this Court by filing the instant action against CRS.

**ANSWER:**  Harrison admits the allegations set forth in paragraph 2.


3.      This counterclaim is brought pursuant to Rule 13(a) of the Federal Rules of Civil Procedures.

**ANSWER:**  Harrison admits the allegations set forth in Paragraph 3.


4.      This Court has diversity jurisdiction over this matter under 28 U.S.C. § 1332.

**ANSWER:**    Harrison admits the allegations set forth in Paragraph 4.


5.      Venue is proper in this judicial district under 28 U.S.C. § 1391(a).

**ANSWER:**  Harrison admits the allegations set forth in Paragraph 4.


6.      On May 1, 1991, REALTORS NATIONAL MARKETING INSTITUTE of the NATIONAL ASSOCIATION OF REALTORS ("RNMI") entered into a Publication Agreement ("Agreement") with HARRISON whereby RNMI agreed to publish a Work entitled "Houses" in accordance with the provisions of the Agreement, including the payment of royalties under certain conditions.

**ANSWER:**  Harrison admits the allegations set forth in Paragraph 6.

7.      On or about January 1, 2002, RNMI was dissolved.  CRS is the successor in interest to all of RNMI's rights, duties and obligations under the Agreement and the Agreement was assigned to CRS as authorized by the express language of paragraph 16 of the Agreement.

**ANSWER**:  Harrison lacks knowledge as to whether RNMI was dissolved and

that CRS is its successor in interest to admit or deny therefore denies same and demands

strict proof thereof.  Harrison denies that the agreement was assigned to CRS in a proper

manner.

8.     Pursuant to its obligations to pay royalties to HARRISON, CRS has since 1991 made numerous royalty payments by check to HARRISON.

     **ANSWER:**  Harrison admits payments have been made but denies that they are

correct.


9.     On approximately April 23, 2003 CRS sent one of the royalty payments referred to in Paragraph 8 above to HARRISON.  HARRISON some time in 2004 informed CRS that check had been lost or not received.

     **ANSWER:**  Harrison admits the allegations set forth in Paragraph 9.


10.     CRS issues a replacement check for the royalties owed to HARRISON and delivered the replacement check to HARRISON.

     **ANSWER:**  Harrison admits the allegations set forth in Paragraph 10.


11.     Thereafter HARRISON negotiated both the original check and the replacement check resulting in an overpayment of the royalties owed by CRS to HARRISON.

     **ANSWER:**  Harrison admits that he negotiated both checks, but denies that this

action resulted in an overpayment of royalties to him.


12.     In 1999 and 2000 HARRISON placed orders with CRS to purchase copies of the Work.  These orders totaled 240 copies of the work.

     **ANSWER:**  Harrison admits the allegations set forth in Paragraph 12.


13.     HARRISON did not pay CRS for the copies of the Work purchased from CRS, but pursuant to an understanding with CRS the cost of these copies was offset against the royalties earned by HARRISON on direct sales of the Work by CRS.

     **ANSWER:**  Harrison denies the allegations set forth in Paragraph 13.


14.     Upon investigating and reconciling HARRISON's claims that he had not been paid all royalties due him, CRS discovered that indeed all royalties due and owing through 2005 had been paid and also discovered that HARRISON had cashed both

checks sent by CRS as described in Paragraph 11 above, there was a resulting overpayment to HARRISON in the amount of $2,592.75 which is due and owing to CRS.

**ANSWER:**  Harrison lacks knowledge as to whether CRS undertook an

investigation to admit or deny therefore denies same and demands strict proof thereof.

Harrison denies that any overpayment or that any sums are owed by Harrison.


15.     During its investigation, CRS also discovered that there remained an outstanding balance due and owing to CRS for copies of the Work ordered by and supplied to HARRISON by CRS as described in Paragraph 12 and 13 above.  After application of all royalties earned by HARRISON for direct sales of the Work by CRS against the sum due for copies of the Work provided to HARRISON as described in Paragraph 13, above, there remains due to CRS the amount of $1243.44.

**ANSWER:**  Harrison denies the allegations set forth in Paragraph 15.


15.(sic) Based on the overpayment of royalties to HARRISON in the amount of $2592.75, the outstanding balance owed to CRS by HARRISON for copies of the Work supplied to him of $1243.44 and the CRS's estimate of accrued royalties due to but not yet paid to HARRISON in an amount less than $1,500, HARRISON owes CRS an amount in excess of $2,000.

**ANSWER:**  Harrison denies the allegations set forth in Paragraph 15.


16.     HARRISON has been advised that he owes CRS a sum in excess of $2,000 but to date, HARRISON has refused to acknowledge that he owes any amount to CRS.

**ANSWER:**  Harrison admits he refuses to acknowledge he owes any money to

CRS as no sums are owed.

WHEREFORE, Henry Harrison respectfully requests that the Court enter judgment in his favor and against Defendant CRS, that he be awarded his costs as sustained herein and for such further relief that the court deems just and proper.

Respectfully submitted,


_____ s/ Joshua J. Kaufman
Joshua J. Kaufman
Venable LLP
575 7th Street, N.W.
Washington, D.C.  20004
(202) 344-4057 – Office
(202) 344-8300 - Facsimile

Daniel A. Cummings
Rothschild, Barry & Myers LLP
55 West Monroe Street
Suite 3900
Chicago, IL  60603

Attorneys for Plaintiff and Counter-Defendant

Dated:  April 10, 2008.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 10th day of April, 2008, I did cause a true and correct

copy of the foregoing ANSWER OF HENRY HARRISON TO COUNTER PLAINTIFF

COUNCIL OF RESIDENTIAL SPECIALISTS COUNTERCLAIM to be filed

electronically with the Clerk of the Court through ECF and served electronically through

ECF upon:

      Neil E. Holmes
      James W. Kienzle
      WALKER WILCOX MATOUSEK LLP
      225 West Washington Street, Suite 2400
      Chicago, IL  60606

                                  s/ Joshua J. Kaufman