UNITED STATES IN THE DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HENRY S. HARRISON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 2008-cv-288 |
| ) | |
| THE NATIONAL ASSOCIATION OF ) | Judge Darrah |
| REALTORS, THE REALTORS ) | |
| NATIONAL MARKETING INSTITUTE ) | Magistrate Judge Brown |
| OF THE NATIONAL ASSOCIATION OF ) | |
| REALTORS; and THE COUNCIL OF ) | |
| RESIDENTIAL SPECIALISTS, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| COUNCIL OF RESIDENTIAL ) | |
| SPECIALISTS, ) | |
| ) | |
| Counter-Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| HENRY S. HARRISON, ) | |
| ) | |
| Counter-Defendant. ) | |

**COUNCIL OF RESIDENTIAL SPECIALISTS' MOTION
FOR PARTIAL JUDGMENT ON THE PLEADINGS**

NOW COMES COUNCIL OF RESIDENTIAL SPECIALISTS ("CRS"), by its attorneys, Neil E. Holmen, James Kienzle and Walker Wilcox Matousek LLP, and for its Motion for Partial Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure states as follows:

**BACKGROUND**

On or about January 25, 2008, Plaintiff filed his First Amended Complaint for Money Due against the National Association of Realtors ("NAR"), Realtors National

1

Marketing Institute of the National Association of Realtors ("RNMI"), and Council of Residential Specialists ("CRS") for breach of a publication agreement entered into between Plaintiff and RNMI. RNMI has not been served or appeared. RNMI was involuntarily dissolved in 2002. (Answer ¶ 24). CRS is the successor in interest to all of RNMI's rights, duties and obligations under the contracts at issue in this matter. (Answer ¶ 24). On April 1, 2008, NAR was dismissed from this case.

The Complaint alleges that in 1991 Plaintiff and RNMI entered into an agreement (Exhibit 1 to the Complaint and attached hereto as Exhibit 1, "Agreement") for the publication by RNMI of Plaintiff's work entitled <u>Houses, the Illustrated Guide to Construction, Designs and System</u> ("Work"). (Answer ¶ 9). In 1997 RNMI entered into a separate agreement with Dearborn Financial Publishing, Inc. (Exhibit 3 to the Complaint and attached hereto as Exhibit 2, "Dearborn Agreement") by which Dearborn would act as "Publisher's licensee or agent engaged for the purpose of sale, distribution or manufacture of the Work" as that phrase is used in Section 9(b) of the Agreement. (Answer ¶ 13).

Under the terms of the Agreement, Plaintiff was to receive fifteen percent (15%) of the net proceeds received by CRS (the Publisher) for sales made by CRS, and fifteen percent (15%) of the net proceeds received by CRS in respect of sales by Dearborn as CRS's licensee or agent engaged for the purpose of sale, distribution or manufacture of the Work. (Agreement ¶ 9(b)). Plaintiff alleges that he has not been receiving the proper amount from CRS in respect of sales made by Dearborn as licensee or agent as provided for in the Agreement. (Complaint ¶ 19). Plaintiff claims he is entitled to fifteen percent (15%) of all amounts received by Dearborn. CRS claims that Plaintiff is entitled to

receive fifteen percent (15%) of the amounts CRS actually receives from Dearborn. CRS therefore contends that it has complied with the terms of the Agreement and that Plaintiff has received all monies owed to him under the terms of the Agreement. (Answer ¶ 22).

## ARGUMENT

### I. Introduction

As detailed above, the Complaint alleges a garden variety cause of action for breach of a contract between Plaintiff and CRS. The contract allegedly breached is the Agreement. The main point of contention in this matter is the parties' conflicting interpretations of Section 9(b) of the Agreement. Resolution of this issue will resolve the principal dispute between the parties. After this issue is resolved, the amounts owed to Plaintiff or Defendant/Counter-Plaintiff under the Agreement will mainly be a matter of calculation and accounting that can be accomplished by the parties.

### II. Judgment on the Pleadings Standard

A party may move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) after the parties have filed the complaint and answer. Fed.R.Civ.P. 12(c). A motion for judgment on the pleadings is reviewed under the same standards as a motion to dismiss under Rule 12(b) of the Federal Rule of Civil Procedure. <u>Black & Decker, Inc. v. Robert Bosch Tool Corp.</u>, 500 F.Supp.2d 864, 867 (N.D. Ill. 2007). A court ruling on a motion for judgment on the pleadings must accept all well-pleaded allegations as true, and view the facts in the complaint in the light most favorable to the nonmoving party. <u>Forseth v. Village of Sussex</u>, 199 F.3d 363, 364 (7th Cir. 2000). Although federal courts require notice, not fact, pleading, a plaintiff cannot withstand a motion for judgment on the pleadings by relying upon conclusory statements of law or

unsupported conclusions of fact. First Ins. Funding Corp. v. Federal Ins. Co., 284 F.3d 799, 804 (7th Cir. 2002). Nor should a court stretch a plaintiff's allegations beyond their sensible and reasonable implications. Chan v. City of Chicago, 777 F. Supp. 1437, 1440 (N.D. Ill. 1991). In other words, a plaintiff "must set out sufficient factual matter to outline the elements of his cause of action or claim, proof of which is essential to his recovery." Menard Inc. v. U.S. Equities Dev., Inc., 2002 WL 31050160, at *1 (N.D.Ill. Sept. 13, 2002). Judgment on the pleadings is proper where the pleadings raise only questions of law and no questions of material fact. Utica Mut. Ins. Co. v. David Agency Ins., Inc., 327 F.Supp.2d 922, 926 (N.D. Ill. 2004).

As discussed above, the main point of contention in this matter is the parties' conflicting interpretations of Section 9(b) of the Agreement. The language of a contract is not ambiguous simply because the parties disagree upon its meaning. Omnitrus Merging Corp. v. Illinois Tool Works, 256 Ill.App.3d 31, 37, 628 N.E.2d 1165, 1170 (1st Dist. 1993). This issue will therefore ultimately be decided by the Court's interpretation of the operative provision of the Agreement. Contract interpretation is a matter of law. See, e.g., Rubin v. Laser, 301 Ill.App.3d 60, 68, 703 N.E.2d 453, 459 (1st Dist. 1998); Regnery v. Meyers, 287 Ill.App.3d 354, 360, 679 N.E.2d 74, 77 (1st Dist. 1997). Illinois courts presume that a contract sets forth the entire agreement between the parties. Clarendon America Ins. Co. v. 69 West Washington Management LLC, 374 Ill.App.3d 580, 586, 870 N.E.2d 978 (1st Dist. 2007). Moreover, the Agreement contained an integration clause which provided:

4

> 18. <u>Entire Agreement</u>  This Agreement contains the whole understanding of the parties, supersedes all previous oral or written representations or agreements, and may not be changed, modified, or discharged orally.  Any modification, change or discharge of this Agreement must be in writing and signed by a duly authorized officer of the PUBLISHER.

(Agreement ¶ 18). The Illinois Supreme Court has held "where parties formally include an integration clause in their contract, they are explicitly manifesting their intention to protect themselves against misinterpretations which might arise from extrinsic evidence." <u>Air Safety, Inc. v. Teachers Realty Corp.</u>, 185 Ill.2d 457, 464, 236 Ill.Dec. 8, 706 N.E.2d 882 (1999).  Thus, courts should not consider extrinsic evidence if a contract contains such an integration clause.  <u>Id.</u>  <u>See also, Clarendon America</u>, 374 Ill.App.3d at 590.  As discussed below, Section 9(b) the Agreement is not ambiguous and the interpretation of that provision is thus ripe for judgment on the pleadings.

### III.  Plaintiff Has Incorrectly Interpreted Section 9(b) of the Agreement

The parties agree that the Dearborn Agreement is covered by Section 9(b) of the Agreement.  (Ans. ¶ 17).  However, the parties disagree as to the application of Section 9(b) of the Agreement.  Section 9(b) provides as follows:

> 9. <u>Royalties</u>  PUBLISHER shall pay to, or upon the order of, the AUTHOR royalties from the proceeds received from the sale or license of the Work (other than sales made pursuant to paragraph 10 hereof), as follows:
>
> ***
> (b) A royalty of fifteen percent (15%) of the net proceeds actually received by the PUBLISHER in respect of (i) all sales by PUBLISHER (or PUBLISHER'S licensee or agent engaged for the purpose of sale, distribution or manufacture of the Work), less returns, of the regular edition of the Work in the United States and (ii) the exercise of other rights granted to the PUBLISHER pursuant to this Agreement, except as hereinafter provided.

There is no dispute that, under the terms of Section 9(b) of the Agreement, if CRS directly sells a copy of the Work, it is required to pay Plaintiff fifteen percent (15%) of

the "net proceeds actually received" from that sale. However, Plaintiff has taken issue with the amounts payable to him for sales made by Dearborn as CRS's licensee or agent. Section 9(b) of the Agreement provides that Plaintiff is entitled to fifteen percent (15%) of the "net proceeds actually received" by CRS irrespective of whether the sales are by CRS or CRS's licensee or agent (Dearborn). Despite this clear language, Plaintiff argues that he is entitled to fifteen percent (15%) of the revenues "received by the Publisher's licensing agent", i.e., Dearborn. (Com. ¶ 14).

Plaintiff thus reads Section 9(b) of the Agreement to require CRS to pay Plaintiff fifteen percent (15%) of revenues received by Dearborn, rather than, as the Agreement simply and explicitly recites, the "net proceeds actually received by" CRS from Dearborn. Simply put, Plaintiff's interpretation of the contract is not only inconsistent with the plain text of the Agreement, but is illogical and leads to absurd results.

But even if Plaintiff's interpretation of Section 9(b) could be considered plausible, courts will construe a contract reasonably to avoid absurd results. Rubin, 301 Ill.App.3d at 68, 703 N.E.2d at 459 (1st Dist. 1998); Kubala, 287 Ill.App.3d at 524, 678 N.E.2d at 1063. See also, Farmers Auto. Ins. Ass'n v. Rowland, 883 N.E.2d 625, 627, 2008 WL 433653, *2 (Ill.App. 2 Dist. Feb. 13, 2008); Housing Authority of Joliet v. Keys, 326 Ill.App.3d 577, 581, 761 N.E.2d 338, 342 (3d Dist. 2001). When contractual language is susceptible to more than one construction, a court will not place an illogical and ridiculous construction upon the language. Omnitrus Merging Corp., 256 Ill.App.3d at 37, 628 N.E.2d at 1170. Thus, to the extent that a contract is susceptible of two interpretations, one of which makes it fair, customary, and such as prudent persons would naturally execute, while the other makes it inequitable, unusual, or such as reasonable

6

persons would not be likely to enter into, the interpretation which makes a rational and probable agreement must be preferred.  <u>Foxfield Realty, Inc. v. Kubala</u>, 287 Ill.App.3d 519, 524, 678 N.E.2d 1060, 1063 (2d Dist. 1997).  <u>See also, Kokinis v. Kotrich</u>, 74 Ill.App.3d 224, 229, 392 N.E.2d 697, 701 (1st Dist. 1979).

   Under the terms of the Dearborn Agreement, CRS receives from Dearborn royalties ranging from five (5%) to fifteen percent (15%) for copies sold depending on the method of sale by Dearborn.  Ex. 2, § 6.  For example, Section 6(a) of the contract between CRS and Dearborn provides that Dearborn will pay CRS a royalty of ten percent (10%) of Dearborn's revenues "for copies sold in the United States as textbooks, or for use in classroom situations."  Ex. 2, § 6(a).  The crux of the dispute is whether for sales made by Dearborn, Plaintiff is entitled to receive fifteen percent (15%) of the net proceeds received by CRS or fifteen percent (15%) of the net proceeds received by Dearborn.  Under Plaintiff's contorted interpretation of the Agreement, CRS would receive ten percent (10%) of Dearborn's revenues but would be required to pay Plaintiff an amount equal to fifteen percent (15%) of Dearborn's revenues from the sale of each copy of the Work.  Thus, under Plaintiff's interpretation of the Agreement, CRS would <u>incur a loss on every textbook</u> sold by Dearborn at a ten percent (10%) royalty rate.  The same would be true for sales made at a five percent (5%) royalty rate.  For sales at a fifteen percent (15%) rate, the amount due Plaintiff would equal the amount CRS received from Dearborn.  The following hypothetical demonstrates the absurdity of Plaintiff's position for a ten percent (10%) royalty sale.

|  | Literal Interpretation | Plaintiff's Interpretation |
|---|---|---|
| Sale Price of a Textbook | **$20** | **$20** |
| Royalty paid by Dearborn to CRS | **$2** (10% of Dearborn's revenues) | **$2** (10% of Dearborn's revenues) |
| Royalty paid by CRS to Plaintiff | **$.30** (15% of "net proceeds actually received") | **$3** (15% of Dearborn's revenues) |
| Net to CRS | **$1.70** | **- $1.00** |

Thus, under Plaintiff's interpretation of the contract, CRS would be required to pay Plaintiff one dollar ($1.00) more than it actually receives from Dearborn for the sale of one copy of the Work as a textbook. This interpretation is clearly inequitable, unusual and creates illogical, ridiculous and absurd results. No prudent person would enter into a contract that by definition causes that person to lose money. While Plaintiff's interpretation of Section 9(b) conflicts with the express language used in the Agreement and leads to absurd results, the literal interpretation of the Agreement is clearly reasonable, rational and comprehensible.

## CONCLUSION

For the foregoing reasons, Defendant Council of Residential Specialists respectfully requests that this Honorable Court enter judgment in its favor on the pleadings with respect the meaning of Section 9(b) of the Agreement.

April 30, 2008                              Respectfully submitted,

                                            COUNCIL OF RESIDENTIAL SPECIALISTS

                                            By: /s/ James W. Kienzle
                                                One of its Attorneys

Neil E. Holmen
James W. Kienzle
WALKER WILCOX MATOUSEK LLP
225 West Washington Street
Suite 2400
Chicago, IL  60606
Phone:  (312) 244-6700
Facsimile:  312-244-6800

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of April, 2008, I did cause a true and correct copy of the foregoing **Council of Residential Specialists' Motion for Partial Judgment on the Pleadings** to be electronically filed with the Clerk of the Northern District of Illinois, Eastern Division, using the ECF, and served upon the following parties:

>Daniel A. Cummings
>Rothschild, Barry & Myers LLP
>55 West Monroe Street
>Suite 3900
>Chicago, IL  60603
>**Via Electronic Mail – EM/ECF system
>(cummings@rbmchicago.com)**
>
>Joshua J. Kaufman
>Venable LLP
>575 7th Street, N.W.
>Washington, D.C.  2004
>**Via U.S. Mail**

>              /s/ James W. Kienzle
>Attorney for Council of Residential Specialists
>Walker Wilcox Matousek LLP
>225 West Washington Street
>Suite 2400
>Chicago, IL 60606
>Telephone:  312-244-6700
>Facsimile:  312-244-6800