

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HENRY S. HARRISON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 08 CV 288 |
| v. ) | |
| ) | Judge John W. Darrah |
| THE NATIONAL ASSOCIATION ) | |
| OF REALTORS; THE REALTORS ) | |
| NATIONAL MARKETING INSTITUTE ) | |
| OF THE NATIONAL ASSOCIATION ) | |
| OF REALTORS; and THE COUNCIL ) | |
| OF RESIDENTIAL SPECIALIST S ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Henry S. Harrison ("Harrison"), brought a complaint for breach of contract against Defendants: National Association of Realtors ("NAR"), the Realtors National Marketing Institute of the National Association of Realtors ("RNMI"), and the Council of Residential Specialists ("CRS"). Now before the Court is the Defendants' Motion for Judgment on the Pleadings under Federal Rule of Civil Procedure 12(c).

## BACKROUND

Harrison is an author. His principal place of business is in New Haven, Connecticut. NAR is a not-for-profit corporation with its primary place of business in Chicago, Illinois. NAR publishes many books and manuals through RNMI. RNMI was also a not-for-profit corporation, acting as a division of NAR, until it was dissolved involuntarily by the Illinois Secretary of State on June 1, 2002. CRS is a not-for-profit corporation incorporated in Illinois on November 3, 2001; CRS is the successor of all the rights and responsibilities of RNMI as a division of NAR.

In about 1973, NAR, through RNMI, agreed to publish Harrison's work, entitled <u>Houses, the Illustrated Guide to Construction, Design and Systems</u> ("the Work"). Since 1973, Harrison has authored many new editions of the Work, most recently the third edition, written in 1999. Throughout the 1970s and early 1980s, the parties entered into several different agreements involving several different editions of the Work. During that time period, Defendants failed to pay royalties owed to Harrison. In 1984 a settlement agreement was made for the repayment of all unpaid royalties to Harrison by RNMI. In 1991, a new agreement ("the 1991 Agreement") was made between Harrison and RNMI for publication of the Work. Under the terms of the 1991 Agreement, Harrison is to receive defined royalty payments for the sale of the Work, depending on the method and manner of sale. Section 9(b) of the 1991 Agreement provides: "a royalty of fifteen percent (15%) of the net proceeds actually received by the publisher in respect of (i) all sales by publisher (or publisher's licensee or agent engaged for the purpose of sale, distribution, or manufacture of the work) less returns of the regular edition of the work in the United States." Section 9(f) of the Agreement provides that any late royalty payments are subject to five percent (5%) monthly late fees on all balances due until they are paid in full. Sometime in the 1990s, the Defendants once again were late in their royalty payments to Harrison. Another settlement agreement was entered into that dealt with payment of all royalties and fees due to Harrison through 1999.

In 1997, RNMI entered into an agreement ("the Dearborn Agreement") with Dearborn Financial Publishing Inc. ("Dearborn"), under which Dearborn agreed to publish the Work for RNMI. The Dearborn Agreement contained several provisions relating to the compensation of RNMI by Dearborn for sales of the Work. Section 6 of

2

the Dearborn Agreement, titled "Royalties," provides that Dearborn pay to RNMI ten percent of Dearborn's net receipts for copies sold as textbooks or for classroom use and fifteen percent of Dearborn's net receipts for copies sold in the United States through traditional book trade channels.

In 2008, Harrison brought a complaint against Defendants, alleging he had not been paid fifteen percent of the net proceeds actually received by the publisher as required under section 9(b) of the 1991 Agreement, and that he had not been paid penalties that have accrued since the 1999 settlement agreement. Defendants responded with a Motion for Judgment on the Pleadings under Federal Rule 12(c).

## ANALYSIS

A motion for judgment on the pleadings pursuant to Federal Rule 12(c) is subject to the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b). *Gatx Leasing Corp. v. National Union Fire Ins. Co.*, 64 F.3d 1112, 1114 (7th Cir.1995). In ruling on a motion to dismiss for failure to state a claim under which relief can be granted under Federal Rule 12(b), the court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the non-moving party. *Sprint Spectrum L.P. v. City of Carmel, Ind.*, 361 F.3d 998, 1001 (7th Cir. 2004). Federal Rule 8(a)(2) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." In order to meet 8(a)(2)'s requirements, the complaint must describe the claim in sufficient detail "in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" *Bell Atlantic Corp v. Twombly*, __U.S.__, 127 S. Ct. 1955, 1964 (2007) (*Bell Atlantic*) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Second, its allegations must plausibly

3

suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Serv. Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (citing *Bell Atlantic*, 127 S. Ct. at 1973). A motion for judgment on the pleadings under Federal Rule 12(c) may only be granted if the moving party establishes that no material issue of fact remains to be resolved and that they are entitled to judgment as a matter of law. *National Fidelity Life Ins. Co. v. Karaganis*, 811 F.2d 357, 358 (7th Cir.1987).

Judgment on the pleadings is proper where the pleadings raise only questions of law and not questions of fact. *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1994) (*Alexander*). In making the judgment on a Federal Rule 12(c) motion, nothing beyond the pleadings can be considered. *Alexander*, 994 F.2d 333, 335. The central disagreement in this case is over the interpretation of section 9(b) of the 1991 Agreement. Contract interpretation is a matter of law, where a contract is unambiguous. *Murphy v. Keystone Steel & Wire Co., a Div. of Keystone Consol. Industries, Inc.*, 61 F.3d 560, 565 (7th Cir.1995) (*Murphy*). A contract is not ambiguous simply because the parties disagree on the meaning; rather, a contract is ambiguous where the parties disagree and both parties are reasonable in their interpretation. *Murphy*, 61 F.3d at 565. In determining an ambiguity, the contract must be read as a whole, placing it in the context in which it was made. *Murphy*, 61 F.3d at 565. If, after placing it in context the contract is unambiguous, its meaning must be determined as a matter of law. *Murphy*, 61 F.3d at 565.

Defendants assert that although Dearborn may be the agent or the licensee of CRS (formerly RNMI), the language of 9(b) is such that CRS must only pay to Harrison

4

fifteen percent of what it actually receives from Dearborn. Plaintiff asserts that, looking at the contract as a whole, section 9(b) requires that Harrison receive fifteen percent of the amount received from book sales by either CRS or Dearborn, as Dearborn is an agent of CRS. The parties agree that the Dearborn Agreement is subject to the 1991 Agreement; Defendants argue that this does not make Dearborn an agent of the publisher covered under section 9(b) of the Agreement.

The Defendants have not shown that their interpretation of section 9(b) is the only reasonable interpretation as between the parties based on the pleadings. Looking at the facts pled in a light most favorable to the Plaintiff and, drawing all reasonable inferences in his favor, Plaintiff has plausibly pled a claim under which he is entitled to relief. Defendants' have not demonstrated that they are entitled to judgment as a matter of law.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Judgment on the Pleadings pursuant to Federal Rule 12(c) is denied.

Dated: _August 20, 2008_

_____
JOHN W. DARRAH
United States District Court Judge

5